# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL KELLETT, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | No. 18-4757 |
| Acting Commissioner of the Social Security | : | |
| Administration, | : | |
|     Defendant. | : | |

## MEMORANDUM OPINION

**Timothy R. Rice**                                                                                                      June 3, 2019
**U.S. Magistrate Judge**

      The notion that claims of legal error must be preserved at trial for appellate review is a bedrock tenet of our legal system. See, e.g., Judiciary Act § 25, 1 Stat 86 ("no other error shall be assigned or regarded as a ground of reversal . . . than such as appears on the face of the record"); Crowell v. Randell, 35 U.S. 368, 391 (1836) (if it does not appear on the record that an issue has been raised and decided in the lower court, "appellate jurisdiction fails"). Not only does it afford the presiding jurist an opportunity to prevent error, it arms a reviewing court with a full evidentiary and legal record to resolve appellate challenges. See Hormel v. Helvering, 312 U.S. 552, 556 (1941) (it is "essential" for litigants to have an opportunity to offer all relevant evidence at the trial level); see also Fed. R. Evid. 103(a), Adv. Comm. Notes (discussing the requirements for claiming legal error with respect to admission or exclusion of evidence). The justification for a timely challenge loses force, however, when raising such a claim would be futile and not achieve the intended goal of getting things right in the first place.

      This case presents such a dilemma.

      Petitioner Paul Kellett for the first time contends the presiding administrative law judge

("ALJ") was improperly appointed and therefore lacked legal authority to decide his case. See Pl. Br. (doc. 11) at 3–4 (citing Lucia v. S.E.C., 138 S. Ct. 2044, 2055 (2018) (holding ALJs employed by the Securities and Exchange Commission ("SEC") were inferior officers subject to the Appointments Clause of the United States Constitution)). He concedes he failed to present his claim for error before the ALJ, which has prompted the Commissioner to seek summary denial of the Lucia claim because it was not timely raised and is nonjurisdictional. See Def. Resp. (doc. 12) at 6–16 (citing Lucia, 138 S. Ct. at 2045 ("one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief") (internal quotation marks and citation omitted)).

Although Kellett's Appointments Clause objection is nonjurisdictional, his claim merits consideration even though not raised below because it impacts the validity of the underlying proceeding, especially in the unique inquisitorial context of Social Security Administration ("SSA") proceedings. Further, Kellett raised his objection at the earliest possible opportunity after Lucia was decided, and was not required to preserve his Lucia claim by raising it at the initial administrative level of review. In any event, it would have been futile for Kellett to raise his claim before the ALJ because the ALJ was powerless to resolve it.[1]

Kellett's case is remanded to a different, constitutionally appointed ALJ. Since the ALJ's decision was a nullity based on Lucia, I need not address the merits of his additional claims

---

[1] My decision adopts reasoning I previously articulated in Wilson v. Berryhill, No. 18-4862, 2019 WL 2121094 (E.D. Pa. May 14, 2019), and adopted in Culclasure v. Comm'r of the Soc. Sec. Admin., No. 18-1543, 2019 WL 1641192 (E.D. Pa. Apr. 16, 2019) and Perez v. Berryhill, No. 18-1907 (doc. 15) (E.D. Pa. Jan. 7, 2019), report and recommendation adopted, Order (E.D. Pa. Apr. 23, 2019) (doc. 22).

because a new ALJ must conduct a de novo review on remand.[2]

I.   Background

Kellett applied for Disability Insurance Benefits on March 31, 2015, alleging a disability onset date of March 3, 2014. R. at 150. Following a hearing, an ALJ denied Kellett's claim on October 16, 2017. Id. at 10–12. Applying the five-step sequential analysis, see 20 C.F.R. § 416.920(a)(4)(i)–(v), the ALJ found Kellett was not disabled because he could perform his past relevant work and jobs available in the national economy, R. at 25.

The Appeals Council denied Kellett's request for review, id. at 1–3, and Kellett filed this case,[3] Compl. (doc. 2).

II.   The ALJ's Authority to Decide the Case

Lucia

In 2012, an SEC ALJ found Lucia had violated certain securities laws. Lucia, 138 S. Ct. at 2049. On appeal to the SEC, Lucia argued the ALJ was not properly appointed under the Appointments Clause because the ALJ was appointed by SEC staff members rather than the SEC. Id.; see also U.S. Const., art. II, § 2, cl. 2 (inferior officers must be appointed by "the

---

[2]   Although courts should, as a general matter, avoid constitutional questions in advance of the necessity of deciding them, Lying v. Nw. Indian Cemetary Protective Ass'n, 485 U.S. 439, 445 (1988), the Commissioner has previously conceded the Lucia question is a "threshold matter" that must be reached, see Muhammad v. Berryhill, No. 18-172, 2019 WL 2248694 (E.D. Pa. May 23, 2019), N.T. 10/16/18 at 46 (doc. 23) (SSA attorney stating the Lucia claim "impacts whether or not the Court views the ALJ's decision as a valid decision that can be reviewed").

[3]   Kellett consented to my jurisdiction on November 21, 2018 (doc. 7), pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 72, Local Rule 72.1, and Standing Order, In re Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018). See also Roell v. Withrow, 538 U.S. 580, 584 (2003) (consent to Magistrate Judge jurisdiction can be inferred from failure to object after notice and opportunity).

President," "Courts of Law," or "Heads of Departments"); Buckley v. Valeo, 424 U.S. 1, 126 (1976) (per curiam) (inferior officers are those individuals who "exercise significant authority pursuant to the laws of the United States").

After both the SEC and the United States Court of Appeals for the D.C. Circuit rejected Lucia's argument, the Supreme Court reversed, holding that SEC ALJs are inferior officers subject to the Appointments Clause.[4] Lucia, 138 S. Ct. at 2049, 2055. The Court also held Lucia's argument was "timely" because it had been raised "before the Commission[] and . . . in the Court of Appeals and [the Supreme] Court." Id. (internal quotation marks and citation omitted). The Court concluded Lucia was entitled to a new hearing before a different, constitutionally appointed ALJ. Id.

Although Lucia decided the constitutional status of only SEC ALJs, the decision implicated the status of ALJs in other agencies, including the more than 1,600 ALJs at the SSA. See Br. of Nat'l Org. of Soc. Sec. Claimants' Reps., Lucia v. S.E.C., 138 S. Ct. 2044 (No. 17-130) (April 2, 2018), at *1–2; see also Bandimere v. S.E.C., 844 F.3d 1168, 1200 (10th Cir. 2016), cert. denied sub nom, 138 S. Ct. 2706 (2018) (McKay, J., dissenting) (stating there is no "meaningful difference between SEC ALJs and SSA ALJs under the majority's [decision]"). Unlike the SEC which features an adversarial system, however, SSA ALJs differ in significant respects.

Unique Nature of SSA Disability Claims Process

SSA ALJs oversee hearings to determine a claimant's eligibility for benefits. 42 U.S.C. §

---

[4] The Court found SEC ALJs are inferior officers because they (1) "take testimony," (2) "conduct trials," (3) "rule on the admissibility of evidence," and (4) "have the power to enforce compliance with discovery orders." Lucia, 138 S. Ct. at 2053 (citing Freytag v. Comm'r, 501 U.S. 868, 881–82 (1991)).

4

405(b)(1). If the claimant receives an unfavorable decision from the ALJ, he may request review by the Appeals Council, 20 C.F.R. § 422.205(a), followed by review in United States District Court, 42 U.S.C. § 405(g).

Although all ALJs preside over hearings, "[t]he differences between courts and agencies are nowhere more pronounced than in [SSA] proceedings." Sims v. Apfel, 530 U.S. 103, 110 (2000). In other agencies, such as the SEC, litigants are required to present issues and arguments. See id. at 109–10. In the Social Security context, however, the ALJ must investigate the facts and develop the record, considering "arguments both for and against granting benefits." Id. at 111 (citation omitted); Richardson v. Perales, 402 U.S. 389, 410 (1971) ("[The ALJ] acts as an examiner charged with developing the facts."); see also 20 C.F.R. § 404.944. This distinction renders hearings before SSA ALJs "inquisitorial rather than adversarial." Sims, 530 U.S. at 110–11; see also id. at 111–12 (citing SSA regulations illustrating non-adversarial nature of proceedings); 20 C.F.R. § 404.900(b) ("In making a determination or decision in your case, we conduct the administrative review process in an informal, non-adversarial manner."). "Given that a large portion of [SSA] claimants . . . have no representation," it makes good sense to employ such a model. Sims, 530 U.S. at 112.

Until recently, SSA ALJs were appointed from a pool of applicants maintained by the Office of Personnel Management ("OPM"). See Menoken v. McGettigan, 273 F. Supp. 3d 188, 192 (2017) ("OPM has exclusive control over the process used to refer applicants to be considered for ALJ positions."). Following Lucia, the President signed an Executive Order directing that ALJs thereafter be hired by individual agencies, rather than from the OPM's central pool. Exec. Order No. 13,843, 83 Fed. Reg. 32755 (July 10, 2018). That Order changed the appointment process of ALJs prospectively, but did not affect the status of previously

5

appointed ALJs. See id. "On July 16, 2018, the Acting Commissioner ratified the appointment of ALJs . . . to address any Appointments Clause questions involving SSA claims."[5] Soc. Sec. Admin., EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE (2/6/2018).

Before Lucia, and while Kellett was litigating his claims administratively, the Department of Justice ("DOJ") had argued that ALJs were mere employees, not inferior officers subject to constitutional appointment.[6] See, e.g., Br. for Resp., Lucia v. S.E.C., 832 F.3d 277 (D.C. Cir. 2016) (No. 15-1345), 2017 WL 1196122, at *1 ("the [ALJs] employed by the [SEC] are employees of the Commission, not 'inferior Officers'"); see also Muhammad, 2019 WL 2248694, N.T. 10/16/18 at 6–8. While litigating Lucia in the Supreme Court, however, the DOJ changed its position, conceding that ALJs were inferior officers. See Reply Br. for Resp. Supporting Pets., Lucia v. S.E.C., 138 S. Ct. 2044 (2018) (No. 17-130), 2018 WL 1806836, at *1; see also Memo. from the Sol. Gen. to Agency Gen. Counsels at 3 ("[The DOJ] no longer plans to argue that such ALJs are employees rather than inferior officers.").

Application of Lucia to SSA Proceedings

The Commissioner concedes that SSA ALJs are inferior officers who must be appointed pursuant to the Appointments Clause. See Def. Resp. at 7 n.1 ("For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers."); SSR 19-1p, 2019 WL 1202036, at *9583 (Mar. 15, 2019) (anticipating that some claimants may be

---

[5] The SEC similarly ratified the ALJ who presided over Lucia's initial SEC hearing before the Supreme Court issued its decision. See Reply Br. for Resp. Supporting Pets., 2018 WL 1806836, at *18 (noting SEC ratification of its ALJs on November 30, 2017).

[6] The DOJ represents the Commissioner in this case and represented the SEC in Lucia.

entitled to additional administrative review of their claims based on Lucia). This point is underscored by the Solicitor General's memorandum to agency general counsels, which acknowledges that "much of the reasoning of Lucia applies with equal force" to ALJs appointed under 5 U.S.C. § 3105, such as SSA ALJs.[7]  Sol. Gen. Memo. at 3.

That leaves only the timeliness of Kellett's claim to be decided. Because the alleged defect in the appointment of SSA ALJs is an important issue that goes to the validity of SSA proceedings, it should be considered even if not properly preserved before the ALJ. See Freytag v. Comm'r, 501 U.S. 868, 879 (1991). In Freytag, the Court concluded it could consider a challenge to the appointment of Special Trial Judges of the United States Tax Court that had not been raised in the underlying proceedings. Id. Although the claim was nonjurisidictional, and thus forfeitable if not raised below, the Court found "Appointments Clause objections . . . [are] structural constitutional objections that [can] be considered on appeal whether or not they were ruled upon below." Id. at 878–79 (citing Glidden Co. v. Zdanok, 370 U.S. 530, 536 (1962)); see also Schacht v. United States, 398 U.S. 58, 63–64 (1970) (nonjurisdictional rules "can be relaxed by the Court in the exercise of its discretion when the ends of justice so require"). Citing the need to protect the "separation-of-powers concept embedded in the Appointments Clause," the Court considered the claim, notwithstanding the petitioner's failure to raise it below. Freytag, 501 U.S. at 878–79. The same concerns are implicated here.

The Commissioner contends that extending Freytag to "any challenge that concerns the validity of agency proceedings . . . would effectively transform Appointments Clause challenges

---

[7]  The memorandum also notes that "the Department of Justice no longer plans to argue that [ALJs appointed under 5 U.S.C. § 3105] are employees rather than inferior officers. Agencies should appoint all ALJs as inferior officers." Sol. Gen. Memo. at 3.

into jurisdictional challenges" in conflict with Freytag and other appellate decisions. Def. Resp. at 8. I do not extend Freytag in the wholesale manner the Commissioner suggests, but instead find that Kellett's claim is one of the "rare cases" contemplated by Freytag as meriting review because of the unique nature of the SSA adjudicatory system. Other courts agree. See, e.g., Bizarre v. Berryhill, 364 F. Supp. 3d 418, 424–25 (M.D. Pa. Mar. 4, 2019) (like in Freytag: (1) there was no authority identified by the court or the Commissioner suggesting the ALJ had the authority to resolve constitutional challenges to his own appointment; (2) Third Circuit precedent establishes there is no issue preservation requirement at the Appeals Council level; and (3) the SSA lacks a "statutory analogue" to other agencies' requirements that issues be raised administratively or risk forfeiture); Culclasure, 2019 WL 1641192, at *11 (Lucia claim of forfeiture should be excused based on Bizarre reasoning). But see Muhammad, 2019 WL 2248694, at *6 ("Nothing about Muhammad's case warrants excusing his failure to timely raise the Appointments Clause challenge before the ALJ and throughout the administrative process.").

Kellett also raised his Appointments Clause objection at the "earliest possible opportunity" after Lucia was decided. See, e.g., 20 C.F.R. § 404.939. Despite the Commissioner's reliance on previous Appointments Clause challenges to ALJs as proof that Kellett should have been on notice this was a viable argument, Def. Resp. at 14, before Lucia, the shifting position of the DOJ regarding the status of ALJs made such a claim unforeseeable. Compare Br. for Resp., 2017 WL 1196122, at *1 (arguing ALJs are employees) with Reply Br. for Resp. Supporting Pets., 2018 WL 1806836, at *1 (conceding ALJs are inferior officers). This is particularly true because many SSA claimants are unrepresented by counsel and lack any understanding of how SSA ALJs are appointed, or why it makes any difference. See Sims, 530 U.S. at 112. Although Kellett's administrative litigation of his case was concluded before Lucia

8

was decided, he asserted his Appointments Clause objection in his next filing for the case—his federal request for review. See Pl. Br. at 6–16.

Lucia solely concerned SEC proceedings, where "[n]o objection to an order or rule of the [SEC] . . . may be considered by [a reviewing] court unless it was urged before the [SEC] or there was reasonable ground for failure to do so." 15 U.S.C. § 78y(c). Although the Commissioner points to several SSA regulations which direct, inter alia, that issues must be raised at the earliest possible opportunity in the administrative proceedings, no SSA statute or regulation states that an issue is forfeited on judicial review if not raised at the administrative level. See Sims, 530 U.S. at 108; see also 20 C.F.R. §§ 404.933(a)(2), 404.939, 404.940, 404.946(b), 416.1439, 416.1440. "There is nothing in the SSA's regulations that explicitly require[s] a claimant to raise constitutional issues before an ALJ"; moreover, "the language the SSA uses in its regulations is similar to language courts have found to be inconsistent with the existence of an issue exhaustion requirement." Bradshaw v. Berryhill, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *7 (E.D.N.C. Mar. 26, 2019).

Although courts also may judicially impose exhaustion requirements, "the reasons for a court to require issue exhaustion are much weaker" in the context of a non-adversarial administrative proceeding. Sims, 530 U.S. at 110 ("[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding."). It makes little sense to judicially impose such a requirement in the unique inquisitorial, rather than adversarial, context of the SSA. See id. ("The differences between courts and agencies are nowhere more pronounced than in Social Security proceedings."); 20 C.F.R. § 404.900(b). This is especially significant considering SSA proceedings often involve pro se litigants unskilled in the law and

9

the nuances of concepts like waiver, forfeiture, and the Appointments Clause. See Sims, 530 U.S. at 112.

Notably, even Lucia did not raise his claim at the ALJ level. See Lucia, 138 S. Ct. at 2050. Lucia first raised his claim on appeal to the SEC, see id., the equivalent of the Appeals Council level in SSA disability litigation. However, in the SSA, "[c]laimants . . . need not . . . exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." Sims, 530 U.S. at 112.

The Commissioner contends that Ginsburg v. Richardson, 436 F.2d 1146 (3d Cir. 1971), mandates that issues be raised first with an ALJ to avoid forfeiture. Def. Resp. at 9–10. I disagree. Ginsburg concerned the basic application of the Social Security Act and regulations, not a structural constitutional challenge to the SSA adjudicatory system at large.[8] See 436 F.2d at 1151–52 (alleging prejudice of the hearing examiner and failure to transcribe all testimony of an expert witness); see also Freytag, 501 U.S. at 878–79 ("Appointments Clause objections to judicial officers [are] in the category of nonjurisdictional structural constitutional objections that [can] be considered on appeal whether or not they were ruled upon below" (citation omitted)). Although the Commissioner argues that nothing in Ginsburg limited the cases to which its forfeiture rule applied, Def. Resp. at 10, this requirement "makes sense for [only] matters within the agency's and the ALJ's expertise, but not [for] 'constitutional questions which ALJs are

---

[8] In Ginsburg, the Third Circuit held that the petitioner waived the right to object to the allegedly prejudicial conduct of the hearing examiner by failing to raise it before the Appeals Council, and likewise waived the right to object to the hearing examiner's failure to record portions of expert witness testimony by failing to raise it at all at the administrative level. 436 F.2d at 1152. The Supreme Court abrogated Ginsburg's holding that objections are forfeited if not raised before the Appeals Council. See Sims, 530 U.S. at 112. The Court did not decide whether an issue had to be raised before an ALJ to be properly preserved. See id. at 107 ("Whether a claimant must exhaust issues before the ALJ is not before us.").

powerless to decide," see Culclasure, 2019 WL 1641192, at *7 (quoting Bizarre, 364 F. Supp. 3d at 422). Ginsburg is not controlling.

The Commissioner's reliance on United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33 (1952), is equally unpersuasive. Def. Resp. at 6. L.A. Tucker involved Interstate Commerce Commission proceedings, which are adversarial in nature and bear little similarity to the unique nature of SSA proceedings. Compare L.A. Tucker, 344 U.S. at 36 ("[The ICC] examiner had [no] function except to decide justly between contestants in an adversary proceeding.") with Richardson, 402 U.S. at 410 ("[The SSA ALJ] acts as an examiner charged with developing the facts."). Further, the claim in L.A. Tucker was that the hearing examiner was not appointed pursuant to the Administrative Procedure Act; it did not involve a constitutional claim. 344 U.S. at 35.

It also makes little sense to require a claimant to raise an issue before an ALJ who is powerless to resolve it. See Pl. Br. at 3–4. In an Emergency Message providing guidance to ALJs on Appointments Clause challenges, the SSA acknowledged that ALJs were powerless to decide constitutional issues. See Soc. Sec. Admin., EM-180003 REV, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process.[9] The Commissioner directed ALJs to respond to a claimant's Appointments Clause challenge only by "acknowledg[ing] that the issue was raised," and noting in the hearing decision that "[the ALJ does] not have the authority to rule on [the] challenge."

---

[9] This Emergency Message has been updated by Soc. Sec. Admin, EM-180003 REV 2, Important Information Regarding Possible Challenges to the Appointment of Administrative Law Judges in SSA's Administrative Process—UPDATE (2/6/2018).

11

Id. This directive acknowledges the futility of raising a Lucia claim at the ALJ level.[10]

Most courts that have addressed Appointments Clause challenges in the SSA context following Lucia have relied on the "timely challenge" requirement to summarily reject claimants' arguments with little or no analysis. See, e.g., Garrison v. Berryhill, 1:17-CV-00302, 2018 WL 4924554, at *2 (W.D.N.C. Oct. 10, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."); Iwan v. Comm'r of Soc. Sec., No. 17-CV-97, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018) ("Because Iwan did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue."); Holcomb v. Berryhill, No. 17-1341, 2018 WL 3201869, at *3 n.3 (C.D. Cal. June 21, 2018) ("To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.").[11] Such summary denials are unpersuasive.[12] See Bradshaw, 2019

---

[10] Although the court in Muhammad disagreed with the notion that raising a Lucia claim before an ALJ was futile despite the SSA's acknowledgement of that ALJ's lack of authority to resolve such a challenge, see 2019 WL 2248694, at *6, the court cited no evidence to support its position that SSA ALJs could adjudicate a Lucia claim. Nor did it explain why the SSA or its ALJs would attempt any such resolution, for example, by reappointing all 1,600 ALJs, see id. at *7 n.9, at the behest of a single claimant pre-Lucia.

[11] Many of those decisions use the terms "waiver" and "forfeiture" interchangeably. The term "waiver" requires an affirmative relinquishment of a right, whereas "forfeiture" involves a failure to timely assert a right. See United States v. Olano, 507 U.S. 725, 733 (1993) (citation omitted). The Commissioner argues Kellett forfeited his right to bring a Lucia claim by failing to raise it at the administrative level.

[12] Although the simplest approach may be to deny the claim based on "timeliness," as have the many courts cited by the Commissioner, Def. Resp. at 11–12, relying on the "simplest answer to this vexing forfeiture question. . . . fix[es] nothing and do[es] not straighten our path." Jones Bros., Inc. v. Sec'y of Labor, 898 F.3d 669, 678 (6th Cir. 2018) (remanding a Federal Mine Safety and Health Review Commission decision because the ALJ was appointed in violation of the Appointments Clause). Moreover, an increasing number of courts to analyze this issue in the

WL 1510953, at *2 (While [Lucia's] language makes clear that a timely challenge is a prerequisite to the relief [claimant] seeks, it provides no guidance—no matter how many times the Acting Commissioner invokes it—about what constitutes a timely challenge in the [SSA] context.").

One of the few courts to meaningfully analyze the Lucia issue in the context of SSA proceedings was Muhammad, which cited three reasons for concluding that Sims is "less applicable" in this context. 2019 WL 2248694, at *3–5. Its reasoning fails to recognize the Supreme Court's acknowledgement that the Social Security disability process is a unique and specialized system for adjudicating claims in a medical/legal context. See Sims, 530 U.S. at 110.

First, the court in Muhammad found that Sims' failure to address whether issues must be exhausted before an ALJ somehow "signaled" that it would view exhaustion before ALJs differently than it viewed exhaustion before the Appeals Council. Muhammad, 2019 WL 2248694, at *3. Nothing in Sims supports such a view. A court's failure to address an issue not presented to it cannot, as Muhammad suggests, provide any legal basis for limiting Sims' rationale in the manner cited in Muhammad. See Cent. Virginia Cmty. Coll. v. Katz, 546 U.S. 356, 363 (2006) ("[W]e are not bound to follow our dicta in a prior case in which the point now

---

SSA context have concluded there is no administrative exhaustion requirement for Appointments Clause challenges. See, e.g., Culclasure, 2019 WL 1641192, at *10; Bizarre, 364 F. Supp. 3d at 421 ("The [Lucia] majority's statement as to timeliness was not a bright-line demarcation of how and when such a claim must be brought; it simply confirmed the obvious timeliness of the fully preserved and exhausted claim as presented."); Perez, No. 18-1907 (doc. 15) (E.D. Pa. Jan. 7, 2019), report and recommendation adopted, Order (E.D. Pa. Apr. 23, 2019) (doc. 22); Bradshaw, 2019 WL 1510953, at *12; see also Marchant v. Berryhill, No. 18-0345, 2019 WL 2268982, at *14 (E.D. Pa. May 28, 2019) (finding issue forfeited because it was not raised before the Appeals Council, but agreeing that a claimant need not raise an Appointments Clause challenge before the ALJ); Mann v. Berryhill, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018) (remanding on other grounds but permitting Appointments Clause challenge on remand pursuant to its discretion to excuse potential forfeiture under Freytag).

at issue was not fully debated."); Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399–400 (1821) ("general expressions . . . . ought not to control the judgment in a subsequent suit when the very point is presented for decision"). This limiting principle is even more applicable when relying in part on a dissenting opinion. See Muhammad, 2019 WL 2248694, at *3 (citing Sims, 530 U.S. at 117, 120 (Breyer, J., dissenting)).

Second, the court found Muhammad's constitutional claim was "as adversarial as it gets," and therefore weighed in favor of requiring issue exhaustion. Muhammad, 2019 WL 2248694, at *4. This rationale is squarely at odds with Sims, which declined to judicially impose an exhaustion requirement before the Appeals Council.[13] The touchstone of Sims was its focus on the inquisitorial nature of Social Security disability litigation. See Sims, 530 U.S. at 110–12. Whether the issue is legal or factual, or involves a counseled or pro se petitioner, see Muhammad, 2019 WL 2248694, at * 4 (attempting to distinguish Sims because the issue was "purely legal" and petitioner had counsel), is not dispositive. Sims' operative premise is that the Social Security disability adjudicative process is different from almost every other type of administrative or civil litigation. The fact that the ALJ could not have resolved the Lucia issue, even if it had been raised before him, further illustrates the stark difference in both process and decision-making that Sims highlighted.

Finally, Muhammad's reliance on Social Security regulations, see 2019 WL 2248694, at *9, is illusory at best, see Bizarre, 364 F. Supp. 3d. at 422. No matter how tortured the reading,

---

[13] In Marchant, the court concluded that there is no ALJ-level issue exhaustion requirement in the SSA context, but found that "a plain reading of Lucia considers Appointments Clause challenges 'timely' if raised for the first time before the Appeals Council." 2019 WL 2268982, at *13–14. The Commissioner does not dispute that Sims held to the contrary. Def. Resp. at 9. Moreover, Marchant fails to consider that Lucia's claim arose in the context of SEC, not SSA, proceedings, with a vastly different regulatory scheme. See supra at 9.

the SSA regulations fail to squarely address the Lucia issue. See Bradshaw, 2019 WL 1510953, at *7. And the futility of objecting before an ALJ who was powerless to decide a constitutional question is perhaps the most persuasive reason to now review an issue that goes to the essence of whether the ALJ possessed legal authority to decide Kellett's case.

This case should be remanded based on the improper appointment of the ALJ who decided it. Like Lucia, remand must be to a different ALJ. Although the Commissioner has since ratified the appointment of all SSA ALJs, see EM-180003 REV 2, the ALJ here "already both heard [Kellett's] case and issued an initial decision on the merits. He cannot be expected to consider the matter as though he had not adjudicated it before," Lucia, 138 S. Ct. at 2055.

An appropriate Order accompanies this opinion.